UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE:

| | |
|---|---|
| JOSEPH J. KILMARTIN | Case No. 13-50070 |
| Debtor | Hon. Thomas H. Fulton |
| | Chapter 7 |
| KYLE BOWE, | |
| Plaintiff | Adv. Proc. No. 13-05005 |
| vs. | |
| JOSEPH J. KILMARTIN, | |
| Defendant | |

### MEMORANDUM-OPINION

THIS ADVERSARY PROCEEDING comes before the court on Plaintiff Kyle Bowe's motion seeking summary judgment against Defendant Joseph J. Kilmartin. For the reasons expressed below, the Court DENIES the Plaintiff's Motion.

### FACTUAL BACKGROUND

On or about January 23, 2009,[1] Plaintiff and the Defendant found themselves in a home located in Pemberton Township, Burlington County, New Jersey. There, the two men became involved in a violent altercation.

---

[1] The documents submitted differ on the question of whether the incident occurred on January 23 or 24. For the purpose of this opinion, the exact date of the incident is immaterial.

1

Accounts of the incident differ. The Plaintiff claims he was struck first without provocation, while the Defendant insists that he "reflexively struck back" to defend himself against an attack from the Plaintiff. (Def.'s Objection Pl.'s Mot. Summ. J. at 1). The Plaintiff seems to have emerged from the fray significantly the worse for wear. He alleges, and the Defendant does not dispute, that he "suffered severe physical and emotional trauma necessitating medical intervention." (Pl.'s Mem. Supp. Mot. Summ. J. at 1). In an affidavit submitted to this Court, the Plaintiff lists a number of specific injuries including, but not limited to, fractured nasal bones, head contusions, and a lost tooth.

The Plaintiff pursued a criminal complaint against the Defendant. On November 30, 2010, a New Jersey grand jury indicted the Defendant on a charge of Aggravated Assault. N.J. STAT. ANN. § 2C:12-1b(1). Instead of risking an Aggravated Assault conviction, the Defendant pled guilty to the lesser crime of Simple Assault. N.J. STAT. ANN. § 2C:12-1a.[2] On February 18, 2011, the Defendant was sentenced to 270 days in Burlington County Jail and ordered to pay restitution to the Plaintiff in the sum of $11,580.60.

The Plaintiff also pursued a civil complaint against the Defendant in the Superior Court of New Jersey, Civil Division (the "New Jersey Court"). According to his affidavit, the Plaintiff initiated the New Jersey lawsuit on January 19, 2011, the Defendant was served with summons on February 18, 2011, the Defendant answered the complaint on April 18, 2011, and the parties then engaged in discovery.[3] On September 19, 2012, the case was arbitrated in front of arbitrator Chris Curtis. The Defendant appeared *pro se*.[4] An arbitration award was filed the same day, in favor of

---

[2] The Defendant also appears to have pled guilty to a charge of Unlawful Restraint. N.J. STAT. ANN. § 2C:13-3. (*See* Pl.'s Ex. 2, at 1).

[3] No pleadings or discovery-related documents from the New Jersey action have been submitted in this adversary proceeding. The parties' briefings to the Court on this matter do not describe the counts or allegations contained in the Plaintiff's New Jersey complaint.

[4] There is some disagreement about the Defendant's participation in the arbitration. The Defendant was not represented by counsel, and claims that he was not given the "opportunity . . . to call witnesses or present testimony." (Def.'s Aff. at 2). The Plaintiff states that the Defendant

2

the Plaintiff, for $60,000.[5]

But there was a problem with the arbitration award. The award stated that the Defendant was 100 percent liable, Plaintiff was zero percent liable, and that the Plaintiff was entitled to $60,000. The award, however, also stated that one of the reasons that the arbitrator made the award was that the Defendant had "pleaded guilty to N.J.S. 2C-12-1b(1), aggravated assault." (Pl's Ex. 4, at 1). This was untrue: the Defendant had pled guilty to a different crime, Simple Assault.

In response to this error, the Plaintiff and Defendant–now represented by counsel–entered into a Consent Order that the parties then filed in the chambers of Judge M. Patricia Richmond on October 23, 2012. The Consent Order has been submitted in this case as Exhibit 4 to the Plaintiff's Motion for Summary Judgment.

The Consent Order states, first, that "Plaintiff Kyle Bowe filed this action to recover damages for personal injuries he sustained as a result of a January 24, 2009 incident involving Defendant Joseph Kilmartin." (Pl.'s Ex. 4, at 1). The Consent Order then recounts how the case was arbitrated to the favor of the Plaintiff and states that the arbitrator made several findings in support of his award, including: (1) that the Defendant pled guilty to aggravated assault; (2) that the Plaintiff sustained various injuries; (3) that the award was inclusive of any outstanding medical bills; (4) that the award was in addition to the restitution imposed by the criminal proceedings; and that (5) a defense was presented. Next, the Consent Order explains as follows:

---

"participated in the proceedings" and "was able to ask questions and cross-examine." (Pl.'s Aff. at 4). Neither party has submitted any transcript or other record of the arbitration hearing. The only description to be found in the affidavits is the Defendant's statement, as follows: "I walked into the arbitrator's office and was called back to a table in a conference room. The arbitrator said that since I had pled guilty he was awarding [Plaintiff] $60,000." (Def.'s Aff. at 2).

[5] This arbitration award has not been submitted to the Court.

3

> WHEREAS, the arbitration award inaccurately reports that Defendant pleaded guilty to aggravated assault when in fact Defendant plead guilty only to a misdemeanor charge of simple assault, the parties have mutually agreed to settle based on the conclusions and findings contained in the arbitration award, with the exception that the final judgment order shall reflect an accurate recitation of Defendant's guilty plea to simple assault.

(Pl.'s Ex. 4, at 2). The Consent Order goes on to state that "[u]pon entry of judgment, all other conclusions and findings included in the original arbitration award (excluding the aforementioned reference to Defendant's guilty plea) shall remain the same." (*Id.*). Then, the Consent Order sets forth an enumerated list, apparently containing the findings and conclusions from the original arbitration award. These include a tally of the Plaintiff's injuries, statements as to the Defendant's liability, and recitations of the $60,000 owed in damages and the $11,580 owed in criminal restitution. Finally, the Consent Order states that the Defendant "guarantees payment of the final judgment award . . . and consents to the jurisdiction of this Court for the purposes of enforcing this judgment." (*Id.*). The Consent Order does not state the causes of action or allegations listed in the Plaintiff's complaint, does not refer to the Defendant's mental state, and does not describe what actions the Defendant took that injured the Plaintiff.

In January of 2013, the Plaintiff moved the New Jersey Court for an order confirming the September 19, 2012 arbitration award. On February 8, 2013, via an "Order Confirming Arbitration Award and Entering Judgment," the New Jersey Court granted the motion and entered judgment in favor of the Plaintiff in the amount of $60,000. (Pl.'s Ex. 3). The order entering judgment does not contain any other information about the lawsuit; it contains no description of the contents of the pleadings or any other substantive information about the arbitration proceedings, the award, or the Consent Order.

The Defendant filed a chapter 7 bankruptcy petition on February 4, 2013. On April 1, 2013, the Plaintiff initiated this adversary proceeding, asking the Court to declare the New Jersey restitution award and arbitration award nondischargeable under 11 U.S.C. § 523(a)(6), which excepts from discharge any debt "for willful and malicious injury by the debtor." 11 U.S.C. § 523(a)(6).

The Defendant filed his answer on May 7, 2013. He admitted that the criminal restitution award was nondischargeable, but disputed the nondischargeability of the arbitration award, contending that none of his actions were willful or malicious.

On September 19, 2013, the Plaintiff filed his Motion for Summary Judgment. The Plaintiff argues that he is entitled to a § 523(a)(6) nondischargeability determination under a theory of collateral estoppel. According to the Plaintiff, the arbitration award against the Defendant was a conclusive determination that the Defendant willfully and maliciously injured him, thus foreclosing any relitigation of the issue of the Defendant's mental state. The Defendant contends that no determination of his mental state was ever made at the arbitration hearing, and that therefore a trial must be held to determine the dischargeability of the arbitration award.

## SUMMARY JUDGMENT STANDARD

The Bankruptcy Court for the Western District of Kentucky has previously described the standard to be employed in evaluating a motion for summary judgment:

> In considering a motion for summary judgment, the question presented to this Court is whether there is "no genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). This Court cannot try issues of fact on a Rule 56 motion, but is authorized to determine whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc*., 668 F.2d 905, 908 (6th Cir. 1982). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court held that "in filing a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden; i.e., whether a jury could reasonably find either the plaintiff proved his case by the quality or quantity of evidence required by the law or that he did not." *Id*., 477 U.S. at 254, 106 S.Ct. at 2513.
>
> When ruling on a motion for summary judgment, the inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion, in this case the Defendant/Debtor. *Anderson*, 477 U.S. at 242, 106 S.Ct. at 2506-07. By granting summary judgment, the Court is concluding that based on the evidence upon which the nonmoving party intends to rely at trial, no reasonable fact finder could return a verdict for the nonmoving party. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir. 1985).

5

> The moving party carries the initial burden of proof by informing the Court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. Once the moving party has produced such evidence, the nonmoving party must then direct the Court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. In other words, the nonmoving party, in this case the Defendant/Debtor, must come forward with evidence establishing that he has a viable defense to the stated cause of action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *First National Bank v. Cities Service Co.*, 391 U.S. 253, 289-90, 88 S.Ct. 1575, 1592-93, 20 L.Ed.2d 569 (1968).

*United States v. Cassidy* (*In re Cassidy*), 213 B.R. 673, 676 (Bankr. W.D. Ky. 1997).

As conceded by the Plaintiff, "the party contesting the dischargeability of a debt under § 523(a)(6) has the burden of proving, by a preponderance of the evidence, that the debtor's conduct was both willful and malicious." (Pl.'s Mem. at 3) (citing *Grogan v. Garner*, 498 U.S. 279 (1991) and *Spilman v. Harley*, 656 F.2d 224, 229 (6th Cir. 1981)).

## DISCUSSION

11 U.S.C. § 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the properties of another entity." 11 U.S.C. § 523(a)(6). Because § 523(a)(6) uses the words "willful and malicious," any analysis of the statute must address the debtor's mental state when he or she caused the injury for which the debt was incurred.

The Supreme Court and the Sixth Circuit Court of Appeals have both addressed the mental state element of § 523(a)(6). According to the Supreme Court, "willful and malicious injury" refers to "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhua v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). The Sixth Circuit Court of Appeals has further clarified the issue by stating that "unless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 464 (6th Cir. 1999) (citing RESTATEMENT (SECOND) OF TORTS § 8A, at 15 (1964)). Moreover, because the "willful and malicious" language of § 523(a)(6) requires

a deliberate or intentional injury, "[n]egligent or reckless acts . . . do not suffice to establish that a resulting injury is 'willful and malicious.' " *Kawaauhua*, 523 U.S. at 64.

The Plaintiff argues that principles of collateral estoppel allow him to satisfy § 523(a)(6)'s mental state requirement. By his account, the arbitration award and resulting judgment conclusively established that the Defendant caused him a deliberate or intentional injury.

In deciding whether the judgment resulting from the New Jersey arbitration award conclusively determined the Defendant's mental state and thus precludes relitigation of that issue in this Court, the Court must "consider the law of the State in which the judgment was rendered." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 375 (1985).

A convenient summation of New Jersey collateral estoppel law can be found in the case of *Panniel v. Diaz*, 871 A.2d 156 (N.J. Super. Law Div. 2004):

> [F]or the doctrine [of collateral estoppel] to apply to foreclose the relitigation of an issue, the party asserting the bar must show that:
>
> > (1) the issue to be precluded is identical to the issue decided in the prior proceeding;
> >
> > (2) the issue was actually litigated in the prior proceeding;
> >
> > (3) the court in the prior proceeding issued a final judgment on the merits;
> >
> > (4) the determination of the issue was essential to the prior judgment; and
> >
> > (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> Even if all of these stated elements of collateral estoppel are met, a court can decide not to apply the doctrine where there are sufficient countervailing interests, or if it would not be fair to do so. It remains essential that the party to be bound by the former adjudication have "fair notice and be fairly represented in the prior

> proceeding [;] [p]reclusion can only occur [w]hen an issue of fact or law is actually litigated and determined by valid and final judgment."

*Panniel*, 871 A.2d at 162 (N.J. Super. Law Div. 2004) (internal citations omitted).

New Jersey courts recognize the preclusive effect of arbitration awards, *Id.* at 164, so the mere fact that the Plaintiff obtained his judgment through arbitration does not pose a problem for him here. The problem for the Plaintiff is that the documents submitted to this Court contain no determination, nor even any mention, of the Defendant's mental state. Nor is it apparent that a determination of the Defendant's mental state was essential to the arbitration award or resulting judgment.

The Plaintiff points to the fact that the Defendant pled guilty under New Jersey's Simple Assault Statute. But a guilty plea to the crime of Simple Assault does not conclusively establish the Defendant's "willful and malicious" mental state, because criminal liability under New Jersey's Simple Assault statute can be predicated on behavior undertaken "purposely, knowingly[,] *or recklessly*." N.J. STAT. ANN. § 2C:12-1a(1) (emphasis added).[6]

The Plaintiff also argues that a civil judgment in an action where a debtor is found to have committed the tort of assault should qualify as determinative of the debtor's "willful and malicious" mental state, thus precluding further litigation of the issue.[7] The Court does not disagree. Indeed,

---

[6] What's more, as conceded by the Plaintiff, New Jersey courts "do not hold that a guilty plea may be used for collateral estoppel purposes." (Pl.'s Mem. at 6). Though a guilty plea can be introduced into evidence as an admission, "it does not constitute conclusive proof of the facts underlying the offense." *State of New Jersey Dep't of Law and Pub. Safety v. Gonzalez*, 667 A.2d 684, 690 (N.J. 1995).

[7] Two cases cited by the Plaintiff, *Smith v. Pitner* (*In re Smith*), 696 F.2d 447 (6th Cir. 1982) and *Johnson v. Miera* (*In re Miera*), 926 F.2d 741 (8th Cir. 1991), stand essentially for the same proposition: civil judgments predicated on intentional torts like assault and battery can lead to nondischargeable debts via collateral estoppel. The problem here is that the Court lacks a determination from the New Jersey Court that an intentional tort is what in fact occurred.

The Plaintiff also cites the § 523(a)(6) cases of *Stewart Tilghman Fox & Bianchi v. Kane* (*In re Kane*), 470 B.R. 902 (Bankr. S.D. Fla. 2012) and *Kleman v. Taylor* (*In re Taylor*), 322

the tort of assault constitutes "almost the very definition of willful and malicious conduct." *Savage v. Murphy* (*In re Murphy*), 471 B.R. 190, 193 (Bankr. W.D. Ky. 2012). This is precisely because the civil tort of assault is an intentional tort, requiring that the tortfeasor act "intending to cause a harmful or offensive contact . . . ." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009). But the New Jersey Court documents submitted here do not demonstrate conclusively that the Defendant was ever found to have committed the tort of assault. The Consent Order does not mention any counts, elements, allegations of the tort of assault, or allegations that the Defendant intended to cause a harmful or offensive contact with the Plaintiff. In fact, the Consent Order only uses the term "assault" when referring to the Defendant's guilty plea to the crime of Simple Assault, a crime that–unlike the tort of assault–can be predicated on mere recklessness. The Plaintiff equates New Jersey's Simple Assault crime to the tort of assault, but the two are simply not the same thing; the civil tort includes a mental state requirement that the crime lacks.

It is apparent from the documents submitted here that the Plaintiff suffered painful injuries, for which the Defendant was held responsible in civil arbitration. Unfortunately for the Plaintiff, these same documents do not contain any decision as to the issue of the Defendant's mental state. That is an issue "normally not suited to disposition on summary judgment," *Smith v. Hudson*, 600 F.2d 60, 66 (6th Cir. 1979), and the parties must now proceed to litigate it at trial.

---

B.R. 306 (Bankr. N.D. Ohio 2004). But in both these cases, debts were found nondischargeable after trial, not on a summary judgment motion.

## CONCLUSION

Based on the foregoing reasoning, the Plaintiff's Motion for Summary Judgment is HEREBY DENIED.[8] A separate Order consistent with the foregoing has been entered in accordance with Federal Rule of Bankruptcy Procedure 9021.

Thomas H. Fulton
United States Bankruptcy Judge

Dated: March 27, 2014

---

[8] "Generally, an order denying a motion for summary judgment is not a final order because it does not 'end the litigation on the merits.' " *Klingshirn v. United States* (*In re Klingshirn*), 209 B.R. 698, 700 (B.A.P. 6th Cir. 1997) *aff'd*, 147 F.3d 526 (6th Cir. 1998) (citing *Champion Int'l Corp. v. All Am. of Ashburn, Inc.*, 45 B.R. 840, 841 (N.D. Ga.1984)). *See also* FED. R. BANKR. P. 8001(b) (regarding appeals from an interlocutory judgment, order, or decree of a bankruptcy judge).